UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| **DAARON HARRIS,** | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )   Case No. 1:19-CV-00190-NCC |
| | ) |
| **BILL STANGE,**[1] | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1). Respondent has filed a response (Doc. 14) and Petitioner has filed a reply (Doc. 19). In addition, Petitioner filed a Request for Retrospective Psychiatric Evaluation, Pursuant to Pate Robinson, or Alternatively Request for Evidentiary Hearing and Request for Limited Discovery (Doc. 25). Respondent has filed a response (Doc. 32) and Petitioner has filed a reply (Doc. 37). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) (Doc. 7). After reviewing the case, the Court has determined that Petitioner is not entitled to relief. As a result, the Court will **DENY** the Petition, as well as Petitioner's Request for Retrospective Psychiatric Evaluation, Pursuant to Pate Robinson, or Alternatively Request for Evidentiary Hearing and Request for Limited Discovery, and **DISMISS** the case.

---

[1] Petitioner is currently incarcerated at Southeast Correctional Center in Charleston, Missouri. *See Missouri Dept' Corr. Offender Search*, https://web.mo.gov/doc/offSearchWeb/offender InfoAction.do (last visited March 17, 2023). Bill Stange is the Warden. Therefore, Bill Stange should be substituted as the proper party respondent. *See* 28 U.S.C. § 2254, Rule 2(a).

# I.  PROCEDURAL HISTORY

On May 1, 2014, Petitioner was found guilty by a jury in the Circuit Court of the City of St. Louis, Missouri of murder in the first degree (Count I), burglary in the first degree (Count III), and two counts of armed criminal action (Counts II and IV) (Doc. 14-5 at 92, 118-21, 152-55).  On June 20, 2014, the Circuit Court sentenced Petitioner to a total sentence of life without parole plus 30 years in the Missouri Department of Corrections (Doc. 14-5 at 152-55).  Petitioner appealed the judgment, raising six claims:

> (1) The trial court abused its discretion in denying Appellant's objection and request for a mistrial in violation of his rights to due process and a fair jury trial in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 18(a) of the Missouri Constitution because the court improperly questioned Juror Mooney revealing that she did not believe the State had proved its case beyond a reasonable doubt and instructed her to continue deliberating despite knowing that Mooney had made a decision that was contrary to the majority of the other jurors. Appellant was prejudiced because the trial court knew there was a split in the jury and refused to grant a mistrial, and instead compelled Mooney to return guilty verdicts against Appellant.
>
> (2) The trial court erred in denying Appellant's motion to suppress statements and in admitting, over objection, testimony and evidence concerning Appellant's statements that Appellant did not understand his rights, he did not knowingly and intelligently waive them in that he did not in fact have the mental capacity at the time of the waiver to comprehend his rights because Appellant was young; grieving the death of his father; his cognitive abilities were questionable; questioning was repeated and prolonged; he was under the influence of Percocet and marijuana; he was deprived of food and sleep; he was cut off from his family; the officers ignored his request for a lawyer; the "waiver" prior to his recorded statement was invalid; and, the officers induced the taped statement by threatening that his brother would be charged; and his statements were also the result of coercion, and therefore involuntary denying Appellant's rights to due process, counsel, freedom from unreasonable searches and seizures, and freedom from self-incrimination as guaranteed by the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10, 15, 18(a) and 19 of the Missouri Constitution.
>
> (3) The trial court abused its discretion in failing to redact evidence about Appellant's past with Division of Youth Services, about fake money, about his

alleged street name of D Murder, and buying drugs because the evidence was not legally relevant, was more prejudicial than probative of Appellant's commission of the charged crimes, and deprived his rights to due process, to a fair trial, and to be tried only for the charged offenses in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article I, Sections 10, 17, and 18(a) of the Missouri Constitution, in that the jury used it as improper propensity evidence and substantive evidence of Appellant's guilt. This evidence was unnecessary to the jury's deliberation of Appellant's guilt, more prejudicial than probative, and played a decisive role in the jury's determination of Appellant's guilt.

(4) The trial court abused its discretion in denying Appellant's motion to waive his counsel and proceed pro se because the request was reasonable under the circumstances and its denial resulted in prejudice to Appellant, in that (1) Appellant requested a psychiatric evaluation, a motion for speedy trial, and wanted witnesses, Harold Mosley, Yvonne Jackson, and Darnell Scott, to testify at trial; (2) Appellant did not want trial counsel to represent him; and (3) Appellant understood the risks of representing himself because Appellant was competent to represent himself and there is a reasonable likelihood the error contributed to the jury's guilty verdict. The trial court's rulings denied Appellant's rights to due process of law and a fair trial in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 18(a) of the Missouri Constitution.

(5) The trial court abused its discretion in overruling Appellant's objections and allowing the State to admit into evidence Deon's photograph with a fluffy puppy (State's Ex.1) because the admission of this photograph was more prejudicial than probative, and deprived Appellant of his right to due process, a fair trial, and to a fair and impartial jury, as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10, 18(a), and 22(a) of the Missouri Constitution in that modern technology would have allowed the removal of the puppy from the photograph. Appellant was prejudiced because the photograph was blown-up and displayed on a large projection screen for the jury's viewing, exacerbating the emotional and inflammatory nature of the photograph. Further, the fluffy puppy photo served only to inflame the passions and prejudices of the jury and to divert the jury's attention from fair and impartial consideration of whether Appellant was guilty of the charged offenses beyond a reasonable doubt.

(6) The trial court erred in denying Appellant's permission to contact or question Juror Mooney, per local rule 53.3, in violation of his rights to due process and a fair jury trial in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 18(a) of the Missouri Constitution because the juror's testimony was necessary for purposes of Appellant's motion for new trial, in that if the juror had been coerced into finding

3

> Appellant guilty during deliberations, Appellant did not have a fair and impartial jury and is entitled to a new trial.

(Doc. 14-1). On September 22, 2015, the Missouri Court of Appeals for the Eastern District affirmed Petitioner's conviction and sentence on direct appeal (Doc. 14-4; *State v. Harris*, 477 S.W.3d 131 (Mo. Ct. App. 2015)). On November 5, 2015, Petitioner's Motion for Rehearing or, in the Alternative, Application for Transfer was denied. On December 22, 2015, Petitioner's application for transfer was denied (Doc. 14-16). The Missouri Court of Appeals' Mandate issued on December 30, 2015.

Petitioner filed a pro se motion for post-conviction relief on March 14, 2016 (Doc. 14-9 at 36). On September 13, 2016, counsel filed an amended motion for post-conviction relief on Petitioner's behalf raising six claims:

> (1) [T]rial counsel failed to adequately and completely impeach state's witness Yvonne Jackson with prior inconsistent statements she made to police.
>
> (2) [Mr. Harris'] conviction was obtained through the [knowing] use of the perjured testimony of witness Yvonne Jackson.
>
> (3) [T]rial counsel failed to obtain Mr. Harris' medical records for use at trial.
>
> (4) [T]rial counsel failed to locate and call as a witness Shaaron Murray, Mr. Harris' cousin.
>
> (5) [T]rial counsel failed to subpoena witness Darrell Scott, secret witness #1.
>
> (6) [T]rial counsel failed to locate and call as a witness Ronald Holland, a man who lived near the scene of the shooting and was interviewed by the police.

(*id.* at 285-89). After an evidentiary hearing, the motion court denied Petitioner's amended motion (*id.* at 329-43). On September 3, 2019, the Missouri Court of Appeals for the Eastern District affirmed the motion court's denial of the motion (Doc. 14-8; *Harris v. State*, 581 S.W.3d 739 (Mo. Ct. App. 2019)). The Missouri Court of Appeals' Mandate issued on September 26, 2019. On October 23, 2019, Petitioner filed his Petition under 28 U.S.C. § 2254 for Writ of

4

Habeas Corpus by a Person in State Custody raising five grounds (Doc. 1).

## II.  DISCUSSION

In the habeas setting, a federal court is bound by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, to exercise only "limited and deferential review" of underlying state court decisions.  *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003).  Under this standard, a federal court may not grant relief to a state prisoner unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  *Id.* at 407-08.  Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record.  28 U.S.C. § 2254(e)(1); *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004).

### A.  Trial Counsel's Failure to Investigate, Interview, Depose, and Subpoena Darrell Scott (Ground One)

In Ground One, Petitioner asserts, as in his amended motion for post-conviction relief, that trial counsel was ineffective in failing to investigate, interview, depose, and subpoena Darrell Scott

5

(Doc. 1 at 5; Doc. 14-9 at 288). Darrell Scott identified Petitioner to police around a week after the killing (Doc. 14-11 at 7-8, 23-24; Doc. 14-13 at 394-97). He later recanted his identification, stating he lied to get out of jail (Doc. 1-1 at 3; Doc. 14-11 at 24). By that time, Petitioner had made a confession, which the state relied on to convict him (Doc. 14-13 at 325-28; Doc. 14-14 at 116-26, 141-49). Scott did not testify at trial (Doc. 14-13). Respondent argues that this claim is procedurally defaulted because Petitioner failed to raise it in his post-conviction appeal (Doc. 14 at 8). The Court agrees. Petitioner did not raise any claim as to Scott in his post-conviction appeal (Doc. 14-6). Therefore, Petitioner's claim is procedurally defaulted. *See Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012) (claims must be raised through post-conviction appeal).

As cause to excuse the default, Petitioner asserts that he cannot be held liable for post-conviction counsel's failure to physically attach and incorporate his pro se points in the amended motion (Doc. 1 at 5). However, post-conviction counsel *did* raise the failure to subpoena Scott in the amended motion (Doc. 14-9 at 288). In his reply, Petitioner further asserts that ineffective assistance of post-conviction *appellate* counsel should excuse the default under *Martinez v. Ryan* (Doc. 19 at 4, 7). Respondent argues that the limited *Martinez* exception does not allow a claim of ineffective assistance of post-conviction appellate counsel to circumvent a procedural bar (Doc. 14 at 10). The Court agrees. *See Arnold v. Dormire*, 675 F.3d 1082 (8th Cir. 2012) (holding any error by Missouri post-conviction appellate counsel in failing to raise claims cannot constitute cause to excuse procedural default) (citing *Martinez v. Ryan*, 566 U.S. 1, 16 (2012) ("The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings …")); *see also Shinn v. Ramirez*, 142 S. Ct. 1718, 1737 (2022) (discussing the narrowness of *Martinez*).

Alternately, Petitioner raises a gateway innocence claim (Doc. 1-1 at 1-2; Doc. 19 at 8). To state a gateway innocence claim, a petitioner must present new evidence of innocence. *See Schlup v. Delo*, 513 U.S. 298 (1995). "Evidence is only 'new' if it was 'not available at trial and could not have been discovered earlier through the exercise of due diligence.'" *Osborne v. Purkett*, 411 F.3d 911, 920 (8th Cir. 2005) (quoting *Amrine v. Bowersox*, 238 F.3d 1023, 1029 (8th Cir. 2001)), *as amended* (June 21, 2005). As new evidence, Petitioner identifies the affidavit in which Scott recanted his statement to police (Doc 1-1 at 3), and pretrial emails between trial counsel and the prosecutor discussing Scott (Doc. 1-1 at 18-19). In the post-conviction evidentiary hearing, Petitioner and trial counsel both testified that they had Scott's affidavit prior to trial (Doc. 14-11 at 46-47, 24). In the pretrial emails, the prosecutor disclosed that Scott had a pending robbery case and was represented by counsel (Doc. 1-1 at 18). Trial counsel responded, "Hope Darrell doesn't want to snitch on us for a deal on his robbery. I doubt you really need him anyway." (*id.*). At trial, the prosecutor stated there were no deals pending with the state's witnesses (Doc. 14-13 at 44). Neither the affidavit nor the content of the emails constitutes new evidence of innocence. Ground One is denied.

**B. Post-Conviction Counsel's Failure to Physically Attach and Incorporate Pro Se Points (Ground Two)**

In Ground Two, Petitioner argues that post-conviction counsel was ineffective for failing to physically attach and incorporate Petitioner's pro se points in the amended motion (Doc. 1 at 6-7). Respondent argues that this claim is not cognizable (Doc. 14 at 14-15). The Court agrees. "The ineffectiveness or incompetence of counsel during … State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under Section 2254." 28 U.S.C. § 2254(i); *see also Coleman v. Thompson*, 501 U.S. 722, 752 (1991) ("[A] petitioner

7

cannot claim constitutionally ineffective assistance of counsel in [state post-conviction] proceedings."). Ground Two is denied.

### C. Trial Counsel's Failure to Obtain Medical Records (Ground Three)

In Ground Three, Petitioner asserts, as in his amended motion for post-conviction relief and post-conviction appeal, that trial counsel was ineffective in failing to obtain his medical records (Doc. 1 at 8; Doc. 14-9 at 286-87; Doc. 14-16 at 22). Petitioner argues that his medical records would have demonstrated that he could not have committed the crime because he walked with a limp (Doc. 19 at 15). Specifically, Petitioner alleges that the records would have showed that he could not have "kicked the door, couldn't run, or shoot a gun" (*id.*). In addition, Petitioner views the records as critical to challenging the testimony of witnesses Destiny Harris, Yvonne Jackson, and Lashonda Brown (*id.* at 16). Respondent argues that the state court considered the merits of this claim and reasonably denied the claim (Doc. 14 at 18-19). The Court agrees.

No witness could identify the perpetrators in this case. At trial, Destiny Harris, Yvonne Jackson, and Lashonda Brown testified that, looking out a window of the apartment after the shooting, they saw two men walking away from the scene (Doc 14-13 at 335-37, 341-43, 350-51, 361-63). Harris and Brown testified that one of the men was holding a long gun (*id.* at 335, 342, 361). None of the three witnesses saw either man's face (*id.* at 336, 342, 351, 361). None of them mentioned observing if either man had a limp or not (*id.* at 329-363). And none of them testified at the post-conviction evidentiary hearing (Doc. 14-11). The victim Deon Greenwood died from multiple gunshot wounds (Doc. 14-14 at 8-21). The firearms examiner Officer David Menendez testified that there were at least three firearms involved, and that there could have been five (*id.* at 31, 33-34). The state argued there were at least two perpetrators (*id.* at 118).

8

Petitioner's medical records show as follows. Petitioner is left-handed (Doc. 13 at 1). On August 16, 2011, he had incision and drainage surgery on his left hand after he punched his brother in the teeth and sustained a 1.5 cm laceration to his finger which became infected (*id.* at 1-4). There was no underlying fracture or dislocation (*id.* at 3). After surgery, his hand was placed in a bandage and splint (*id.* at 2). He was discharged on August 18, 2011 with instructions on packing and redressing his wound and to make a follow-up appointment (*id.* at 20, 24). The crime in this case occurred approximately two weeks later on August 29, 2011. On September 19, 2011, Petitioner went to the hospital complaining of pain in his upper left leg and hip due to femur surgery at the end of August of 2010 and shooting pain in his left hand (*id.* at 26-27). He reported recently taking his splint off and his stitches out himself (*id.*). He was unable to make a fist (*id.*). He reported being off pain medication for his leg for two months and running out of pain medication for his hand a week ago (*id.*). On April 22, 2012, Petitioner made a confession, which the state relied on to convict him (Doc. 14-13 at 327-28, 406-10; Doc. 14-14 at 123-24).

The motion court found that Destiny Harris and Yvonne Jackson merely said they saw two men walking away and did not describe how either man was walking, such that "[o]ne could only speculate whether, if asked, they might have said one of them did or did not have a limp" (Doc. 14-9 at 340). The motion court denied the claim (*id.*). The Missouri Court of Appeals affirmed (Doc. 14-8). The court likewise found that no witness testified that either of the two suspects were or were not limping and they were never asked, such that "it would be entirely speculation, if asked, whether they would have responded that one of the two suspects was or was not limping" (*id.* at 5). The court further found that "even if asked, there was still one potential suspect that was unaccounted for, which could have been [Harris] walking with a limp

9

in a different direction than the two suspects" (*id.*). The court concluded that "any evidence that [Harris] had a limp at the time of the murder would not have affected the outcome of the trial" (*id.*). As to Petitioner's hand injury, the court found that "having a hand injury does not necessarily hinder someone from using a firearm, and nothing presented at the [post-conviction] hearing established that [Harris] could not fire one" (*id.* at 5). The court further noted that "the motion court was free to disbelieve the testimony at the [post-conviction] hearing regarding the alleged severity of the injury" (*id.* at 6).

To succeed on an ineffective assistance of counsel claim, Petitioner must show 1) that counsel failed to exercise the level of skill and diligence that a reasonably competent attorney would exercise in a similar situation, and 2) that Petitioner was prejudiced by counsel's failure. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. To prove prejudice, Petitioner must show there was a reasonable probability that, but for trial counsel's errors, the result of the proceeding would have been different. *Id.* at 694. Federal habeas under AEDPA provides "doubly" deferential review of ineffective assistance claims which were decided in state court. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal citations omitted).

The Court agrees that Petitioner has not sufficiently established prejudice. While the medical records cast some doubt on Petitioner's involvement based on his physical state around the time of the offense, this Court must defer to the state court's determination that the records would not have changed the outcome of Petitioner's trial with any reasonable probability. The records do not establish that Petitioner could not fire a gun, there is no evidence that the two men

10

the witnesses observed did not have a limp,[2] and the theory remains that there were in fact three perpetrators and Petitioner simply was not observed at all.  The Missouri Court of Appeals' decision was not contrary to, or an unreasonable application of, clearly established federal law, as determined in *Strickland v. Washington*.  Ground Three is denied.

### D.  Petitioner's Statements to Police During Interrogation Should Have Been Suppressed (Ground Four)

In Ground Four, Petitioner asserts, as in his direct appeal, that the statements he made during his interrogation were not admissible because he was under the influence, his father had just died, and police threatened to question and charge one of his brothers (Doc. 1 at 10; Doc. 14-1 at 36; Doc. 19 at 16-21).  Respondent argues that the state court considered the merits of this claim and reasonably denied the claim (Doc. 14 at 20-22).  The Court agrees.

At the hearing on Petitioner's motion to suppress his statements, Detective Steven Strohmeyer testified as follows.  Police developed Petitioner as a suspect and put a wanted out for him in March of 2012 (Doc. 14-12 at 5).  Petitioner was arrested on April 21, 2012 for something unrelated to the murder and Detective Strohmeyer was advised of the arrest (*id.*). Detective Strohmeyer and his partner interviewed Petitioner the next day earlier in the morning but after the sun was up (*id.* at 13, 19-20).  Detective Strohmeyer read Petitioner his Miranda rights and Petitioner acknowledged he understood them by signing a warning and waiver form (*id.* at 7).  The interview lasted for a little over two hours (*id.* at 7).  Petitioner was visibly upset at first, sobbing, but composed himself quickly and was able to talk (*id.* at 8).  Detective Strohmeyer was aware that Petitioner's father was dying from cancer, that Petitioner had conveyed his father to the hospital the day before, and that the father had been spitting up blood

---

[2] The Court notes that, while Jackson told police the men were running, the consistent unimpeached testimony at trial was that they were walking (Doc. 14-9 at 333; Doc 14-13 at 335-37, 341-43, 350-51, 361-63).

11

(*id.* at 12-13). Petitioner did not seem to be under the influence of anything (*id.* at 8, 14). Detective Strohmeyer did not smell alcohol or marijuana (*id.* at 19). Petitioner brought an orange drink and declined anything else to eat or drink (*id.* at 8, 14). The entire interaction was recorded (*id.* at 9, 15, 20-21). No threats or promises were made (*id.* at 9). Detective Strohmeyer testified Petitioner was not threatened with charging his brothers, did not ask for an attorney, was not told off camera he could go back to his family and grieve for his father if he talked, and did not tell police about any mental health issues before the video statement was conducted (*id.* at 7, 15-17). Detective Strohmeyer testified similarly at trial regarding the circumstances of Petitioner's confession (Doc. 14-13 at 389-426). *See also* Doc. 14-14 at 104-10 (rebuttal testimony of Detective Strohmeyer's partner).

      The trial court denied the motion to suppress, finding that Petitioner was read his rights and his statement was knowingly and voluntarily made (Doc. 14-12 at 52-53). The Missouri Court of Appeals affirmed (Doc. 14-4). The court found that Petitioner's statements were made knowingly, intelligently, and voluntarily, and that there was no evidence his confession was the result of coercion, overbearing his will (*id.* at 13-14). The court noted that Petitioner was 25 years old, was orally advised of his rights, composed himself before the interview began, did not appear to be under the influence, seemed to understand the questions being asked, was questioned for slightly more than two hours, brought something to drink to the interview, was offered and refused additional food and drink, and testified at trial that he had slept the night before (*id.* at 13-14). The court found the trial court was entitled to believe the testimony of the officers that Petitioner did not request an attorney and that they had neither threatened him nor made any promises (*id.* at 14).

12

The factual findings underlying a state court's legal conclusion that a confession was voluntary are entitled to a presumption of correctness, which can only be rebutted by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1); *Thai v. Mapes*, 412 F.3d 970, 976 (8th Cir. 2005); *see also Thatsaphone v. Weber*, 137 F.3d 1041, 1047 (8th Cir. 1998) ("In reviewing voluntariness, we give 'great weight to the considered conclusions of a coequal state judiciary.'") (quoting *Miller v. Fenton*, 474 U.S 104, 112 (1985)).  While Petitioner's testimony at the suppression hearing and at trial differed substantially from that of Detective Strohmeyer, Petitioner has not identified clear and convincing evidence to rebut the presumption that the state court's factual findings were correct.  This was essentially a he said-he said issue and, without another thumb on the scale, the state court was entitled to credit the testimony of Detective Strohmeyer over that of Petitioner.  The Missouri Court of Appeals' decision was not contrary to, or an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts.  Ground Four is denied.

### E. Actual Innocence (Ground Five)

In Ground Five, Petitioner raises actual innocence as an independent ground for relief. Actual innocence cannot serve as an independent ground for relief, only as a gateway to overcome procedural default for a separate constitutional violation.  *Herrera v. Collins*, 506 U.S. 390, 390-391 (1993); *Burton v. Dormire*, 295 F.3d 839, 848 (8th Cir. 2002).  Ground Five is denied.

### F.  Request for Retrospective Psychiatric Evaluation.

In his Request for Retrospective Psychiatric Evaluation, Pursuant to Pate Robinson, or Alternatively Request for Evidentiary Hearing and Request for Limited Discovery, Petitioner requests that the Court remand this action to St. Louis Circuit Court for a fact determination as to

whether Petitioner was competent to stand trial (Doc. 25 at 1).  Respondent argues that the Court cannot remand the action to state court (Doc. 32 at 5).  The Court agrees.  A federal habeas court can entertain an application for a writ of habeas corpus only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254.  A federal habeas court may grant a writ of habeas corpus, conditionally or otherwise, but it cannot "remand" a case to the state courts for an evidentiary hearing.  *See Billiot v. Puckett*, 135 F.3d 311, 316 n.5 (5th Cir. 1998) (noting that "[i]f the writ is granted, or even conditionally granted, the state, pursuant to available state procedures, may then take whatever action it deems necessary, including reinitiating state court proceedings," but "a federal habeas court cannot 'remand' a case to the state courts"); *Rose v. Lee*, 252 F.3d 676, 688 n.11 (4th Cir. 2001) (commenting "we do not believe that a federal habeas court can 'remand' a case to a state habeas court"); *Hardcastle v. Horn*, 368 F.3d 246, 261 (3d Cir. 2004) (noting "we do not have authority under the federal habeas statutes … to remand a habeas corpus petition to a state court for an evidentiary hearing," but "[f]ederal district courts, by contrast, may conduct such hearings"); *Johnson v. Martin*, 3 F.4th 1210, 1228 n.11 (10th Cir. 2021) (agreeing with *Rose* and *Hardcastle*).

Alternatively, Petitioner requests that the Court grant an evidentiary hearing with limited discovery (Doc. 25 at 1).  Respondent argues that Petitioner's claim is untimely, procedurally defaulted, refuted by the record, and that Petitioner may not introduce evidence outside the state court record (Doc. 32 at 5-12).  The Court agrees that Petitioner's request should be denied.  Petitioner's claim that he was not competent to stand trial does not arise from the same set of facts as the original claims set forth in his petition, and so it does not "relate back" to those claims and is untimely.  *See Mandacina v. United States*, 328 F.3d 995, 999-1000 (8th Cir.

2003); *Mayle v. Felix*, 545 U.S. 644, 664 (2005).  Moreover, Petitioner did not raise any claim related to his competency to stand trial in his direct appeal or post-conviction case, so his claim is procedurally defaulted.  *See Lyons v. Luebbers*, 403 F.3d 585, 593 (8th Cir. 2005).  Finally, even if his claim were not untimely or defaulted, he would not be entitled to a hearing.  There is no indication in the state court record of behavior or demeanor by Petitioner or medical evidence that would warrant a retrospective competency hearing on federal habeas review.  *See Reynolds v. Norris*, 86 F.3d 796, 800-03 (8th Cir. 1996) (setting forth standard for procedural due process habeas claim for failure to hold a competency hearing).  Petitioner's pro se filings in his trial case show he was a decent self-advocate, and he testified relatively coherently in his own defense (Doc. 14-14 at 42-104).  *Cf. Reynolds*, 86 F.3d at 798-99, 801-02 (petitioner gave meandering and irrational testimony stating that the Defense Department was involved in his case and citing the Gulf War, among other things, as a reason for his being on trial, and the defense's psychologist testified that petitioner's testimony showed "significant delusion" and he was not competent to stand trial).  Petitioner's request is denied.[3]

### III.  CONCLUSION

For the reasons stated above, the Court finds that Petitioner is not entitled to federal habeas relief.  Furthermore, Petitioner has failed to make a substantial showing of the denial of a constitutional right, which requires a demonstration "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Khaimov v. Crist*, 297 F.3d 783, 785 (8th Cir. 2002) (quotation omitted).  Thus, the Court will not issue a certificate of appealability.  28 U.S.C. § 2253(c).

---

[3] Although Petitioner's request does not warrant relief, the Court is struck by Petitioner's compelling account of his upbringing and the immense challenges he faced as a child and young adult (Doc. 37 at 11-14).

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Request for Retrospective Psychiatric Evaluation, Pursuant to Pate Robinson, or Alternatively Request for Evidentiary Hearing and Request for Limited Discovery (Doc. 25) is **DENIED**.

**IT IS FURTHER ORDERED** Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED** and this case is **DISMISSED**.

**IT IS FURTHER ORDERED** that a certificate of appealability will not be issued. 28 U.S.C. § 2253.

A separate Judgment shall be entered in accordance with this Memorandum and Order. Dated this 28th day of March, 2023.

    /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE